No. 1543.—GUSTAVE SALBADORE *v.* CRESCENT MUTUAL INSURANCE COMPANY et al.

A resolution of the Board of Underwriters of the city of New Orleans, authorizing a reward to be paid by the insurance companies for the apprehension, with sufficient evidence to convict any person guilty of the crime of arson, can not be explained or interpreted by parol testimony, nor is the testimony of the president of the Board of Underwriters admissible for that purpose.

The several fire insurance companies of the city, by resolution of the Board of Underwriters, instructed John Youenes, fire warden, to make a searching investigation into the cause and origin of all fires which occur in buildings, stocks of merchandise, or on board of any vessels, while lying in this port, insured by any insurance company in the city of New Orleans, and to offer a reward of five thousand dollars for the conviction of any person or persons found guilty of participation in any such fire.

John Youenes, in conformity to this authority, offered a reward of five thousand dollars, to be paid to any person or persons who will procure such testimony as will convict, in the criminal court of this state, any person who may be guilty of the crime of incendiarism. Two criminals, Rose and Abrahams, were imprisoned for the crime of arson before the publication of this reward was made. After it was made, and before the trial in the criminal court, the plaintiff in this suit procured such testimony as led to their conviction. He now seeks to enforce payment of the reward. The insurance companies resist the demand, on the ground that the reward was only intended to cover, and did only cover, such crimes as might be committed after its publication, and did not apply to crimes that had been committed before the reward was made. Held—That, by a fair interpretation of the meaning of the language used in the resolution and the notice given by Youenes, the reward was demandable on producing the necessary evidence to convict, whether the crime had been committed before or after the publication; that the terms of the obligation clearly show the object of the company to be to aid in the punishment of crime, and the protection of themselves and the public against criminals of this character, and not merely as a warning to deter parties from committing incendiary crimes.

To enable a defendant to avail himself of the benefit of a transfer of a litigious right by paying to the transferree only the amount which he paid for the claim, with interest, he must accept the validity of the claim. He can not contest the claim, and, after being defeated, urge against the transferree the litigious character of his title.

APPEAL from Sixth District Court of New Orleans. *Duplantier, J. F. Fuselier, M. A. Dooley, S. Belden, J. Michel* and *T. Drouett,* for plaintiff and appellee. *M. M. Cohen,* for defendants and appellants.

TALIAFERRO, J. In December, 1866, a number of the insurance companies of New Orleans, through their joint agency, designated as "The Board of Underwriters of New Orleans," caused to be published in the newspapers of the city the following advertisement:

"FIVE THOUSAND DOLLARS REWARD—*New Orleans Board of Underwriters, December* 20, 1866.—Whereas, The unusual frequency of fires during the last five months, both in town and country, resulting in the destruction of an enormous amount of property and serious loss of life, and greatly endangering the persons and property of the citizens at large, prove incontestably that the said fires are, for the most part, willful and criminal acts of badly disposed persons,

"Be it, therefore, resolved, That Captain Youenes, the fire warden of this board, be instructed by the chairman of the fire committee to institute before the proper legal tribunal the most thorough and searching investigations into the cause and origin of all fires which occur in buildings, stock of merchandise, or on board vessels, while lying in this port, insured by any insurance company of this city, and, furthermore, that he be authorized to offer a reward of five thousand

dollars for the conviction of any person or persons found guilty of participation in any such fires.

. " Be it further resolved, That the foregoing preamble and resolutions be published by the secretary of this board in four of the daily papers of this city for one month.

    " By order of the board.              ·  CHARLES BRIGGS,
                       " Chairman of the Fire Committee.

    " Attest:

        "James H. Wheeler, Secretary."

" In conformity with, and by authority of the foregoing resolutions, I hereby offer a reward of five thousand dollars, to be paid to any person or persons who will furnish such testimony as will convict, in the criminal court of this State, any person or persons who may be guilty of any participation in the crime of incendiarism.

    dec23 1m 2dp              "JOHN YOUENES, Fire Warden."

The plaintiff brings suit against the various insurance companies, sixteen in all, designating each by its title, (among them the one named in the title of this suit,) for this reward of five thousand dollars, alleging that by his efforts and through his instrumentality he had caused to be arrested, tried and convicted two incendiaries, named Rose and Abrahams, found guilty of the crime of arson, in setting on fire a dwelling house on Canal street, in New Orleans; that he had claimed from defendants the reward proposed by them, but that defendants refused to bestow it.

The answer is a general denial.   The defendants resist the claim on · the ground that the proffered reward related to acts of incendiarism posterior to the date of the public notice and not to acts of that kind anterior to that time; that, as the fire caused by the criminal act of Rose and Abrahams occurred in August, 1866, several months previous to the reward offered, defendants were under no obligation to pay the plaintiff's demand.   As the interpretation to be given to the publication of defendants is to have an important bearing in determining this case, we shall, before examining the facts, consider the question as to its purport.   And here it will be proper, first, to dispose of a bill of exceptions taken by defendants to the refusal of the lower court to admit the testimony of the president of the Board of Underwriters, which was offered to prove the object and intention of the board in authorizing the reward.

The evidence was properly rejected.   The acts should speak for themselves.   It was not for the defendants, after having ushered forth to the world a formal official document, to defeat rights acquired under its conditions by explaining away its meaning by parol proof.   The facts seem to be that the incendiaries were arrested in August, 1866, but not tried and convicted until January, 1867, about a month subsequent to the issuing of the reward offered by defendants.

The verbal criticism resorted to by defendants to show that the terms in which their publication is couched, and the words and expressions employed, indicate their intention to have been to bestow rewards only for the conviction of persons who should, subsequently to the date of their publication, be guilty of acts of incendiarism, signally fails in our opinion to effect that purpose. The reward is offered "to any person who will furnish such testimony as will convict, in the criminal court of this State, any person or persons who may be guilty," etc. This expression "may be guilty" certainly can be applied to those who were guilty at the time the reward was announced as well as to those who might become guilty afterwards. But give the expressions the meaning contended for by the defendants and we do not see that it benefits them. At the time the reward was offered, December 23, Rose and Abrahams were imprisoned on the charge of having set fire to a dwelling house on Canal street in the month of August previous. They were. convicted about a month afterwards. They committed the act in August, 1866, but were not found guilty until January, 1867. If the words "who may be guilty" are taken to mean those who may hereafter be guilty, or may hereafter be found guilty, in the sense contended for by defendants, the plaintiff's position is equally covered. No condition is stated, in the publication, in regard to the time of the commission of the crime; it treats only of conviction and the testimony to effect that object. It is insisted, however, that the reward was not intended for the conviction of the offenders who were arrested in August, 1866. We find no word in the entire instrument that sustains this position. The object of the defendants was plainly to procure conviction and punishment of persons guilty of the terrible crime of arson, to have the salutary effect contemplated by the infliction of punishment, that of deterring others from the commission of the same crime. Would not the conviction and punishment of an offender in January, 1867, for arson, the offense having been committed before the reward was offered, be just as salutary as if the crime had been committed after the reward was proposed?

We think a fair interpretation of the instrument, in its entirety, is against the view set up by the defendants. If there were ambiguity existing, the act would be rather construed againsts the defendants. C. C. article 1953.

Several witnesses were examined in regard to the agency of the plaintiff, and his efficiency in bringing the offenders to trial, and securing their conviction. The evidence is, to some extent, conflicting and contradictory. Three of the witnesses were jurors on the trial of the parties convicted. One of them, Copes, testified that the jury did not attach much consequence to what the plaintiff, as a witness against

the accused, said. The testimony of this witness appears to be somewhat erratic. Nelson and Nick, who were also jurymen, say that the plaintiff's testimony was very important to the State, particularly in regard to Rose. Nick says the jury thought plaintiff the most important witness in the case, and by whose testimony, chiefly, the accused were convicted.

Ganacheau, secretary of one of the companies, made an affidavit for the arrest of the accused, founded upon the statements of several persons, the plaintiff among them. Says his affidavit was made previous to that of the plaintiff's, and that before his own affidavit was made, Rose was arrested.

It appears that the affidavit of the plaintiff was the one upon which the legal investigation was carried on. It has upon the indorsement of the recorder. There were, perhaps, several affidavits made for the arrest of the accused persons.

To go further into the details of these parts of the evidence, which seem at variance, we deem unnecessary. We are satisfied that the record shows the plaintiff to have been an active and very efficient agent in the prosecution and conviction of the offenders. He testified himself, and procured the attendance of another witness, Power, on the part of the State. This witness testified to important facts on the trial of Rose and Abrahams.

Drouett, a witness in the case under consideration, says that it was only by the evidence of the plaintiff that Rose was identified as the man who was seen running out of the store at the time the fire occurred.

Upon the whole, we have no doubt the judgment of the court *a qua* was correctly rendered.

It has been shown to this court that, during the pendency of this appeal, the judgment of the lower court has been transferred by the plaintiff, with subrogation of his rights in the same, to a third party; and that the defendants hold this transfer to be the sale of a litigious right, and, in the event of the confirmation of the judgment of the lower court, they claim the benefit of the law in such cases, of being required to pay only such sum, and interest, as the transferree paid for the judgment.

It is therefore ordered, adjudged and decreed that the judgment of the district court be affirmed, with costs in both courts, subject to such modifications, if any, as the district court may, upon sufficient evidence, find it proper to make, on the ground of the transfer of the judgment, pending the appeal, being the sale of a litigious right, according to article 2622 of the Civil Code; and for this purpose, we remand the case.

Mr. Justice Howe recused in this case.

Salbadore v. Crescent Mutual Insurance Company et al.

## On Rehearing.

Howell, J.  On the former hearing of this cause, we affirmed the judgment of the court *a qua*, in favor of the plaintiff, for the amount of the reward of five thousand dollars, offered by the defendants, "to be paid to any person or persons who will furnish such testimony as will convict, in the criminal court of this State, any person or persons who may be guilty of any participation in the crime of incendiarism;" but, as it was shown that, during the pendency of the appeal, the judgment had been transferred, with subrogation by plaintiff to a third party, we ordered the case, on the prayer of the defendants, to be remanded, to enable them, in the event of an affirmance, to show the consideration of said transfer, and avail themselves of the provisions of article 2622, C. C., relative to the transfer of litigious rights.

The defendants applied for a rehearing, "except on the point as to which the case was remanded;" and two days thereafter the plaintiff also asked for a rehearing, in order to amend our decree, by striking out that portion remanding the cause.

Upon this, the second hearing, we have been unable to change the opinion upon the merits of the cause; but we think the action of the defendants, in protracting the litigation, warrants the change prayed for by plaintiff.

In the case of Leftwich v. Brown, 4 An. 104, the following language of the court is peculiarly applicable to this case, to wit:  "The laws, on which the articles of our Code, concerning litigious rights, are founded, have no other object than the prevention of unnecessary litigation, which is attained in a great measure by the check they impose on the cupidity of speculators in lawsuits.  They enable the defendant to take the place of the purchaser of the suit against him, by paying the price he has paid for it, with interest.  Thereby, the litigation is ended, and the object of the law attained.  But if, as the defendant has done in this case, he continues to contest the suit, raises difficulties as to the right of the plaintiff to recover his debt, and protracts the litigation, he evidently defeats the very object of the law, and can not avail himself of the provision which the law has established in his favor, for the purpose of terminating litigation.  To permit him to do it, would be to defeat the very object of the law."

It is therefore ordered that so much of our former decree as remands this cause to the lower court be set aside, and that, in other respects, it remain undisturbed.

Mr. Justice Howe recused.